UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| GREGORY R. MILLER,<br><br>Plaintiff,<br><br>v.<br><br>JUDGE CHARLES A. STORMONT, in his personal capacity; JACK ELBAUM; EVAN S. STRASSBERG; NPEC, LLC; and GLYDE SOLAR, LLC,<br><br>Defendants. | **REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS TO DISMISS (DOC. NOS. 22, 25, & 26) AND DENY PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DOC. NO. 37)**<br><br>Case No. 2:25-cv-00857<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Daphne A. Oberg |

Gregory R. Miller, proceeding without an attorney, filed this action relating to a case his former employer, NPEC, LLC, filed against him in Utah state court.[1] Mr. Miller brings federal civil rights claims and a state law claim for intentional infliction of emotional distress against NPEC, Jack Elbaum (NPEC's CEO), and Glyde Solar, LLC (another business run by Mr. Elbaum) (collectively, the "Elbaum Parties"); Evan S. Strassberg (an attorney representing the Elbaum Parties in the state court case), and Judge Charles A. Stormont (the judge presiding over the state case).

The defendants have filed motions to dismiss. Judge Stormont, who is sued in his personal capacity,[2] moves to dismiss for lack of jurisdiction and failure to state a

[1] (*See* Compl., Doc. No. 1.)

[2] (*See id.* at 1.)

claim, arguing: Mr. Miller's claims are barred by judicial immunity and the *Rooker-Feldman* and *Younger* doctrines; the injunctive relief claims are barred by 42 U.S.C. § 1983; and the intentional infliction of emotional distress claim is barred by the Utah Governmental Immunity Act.[3] Mr. Strassberg and the Elbaum Parties move to dismiss based on lack of standing, the *Rooker-Feldman* doctrine, issue preclusion, and failure to state a claim.[4] Mr. Miller opposes the motions.[5] Separately, Mr. Miller moves for a preliminary injunction, seeking to enjoin enforcement of certain orders in the state case.[6]

As explained below, Mr. Miller's claims are barred by the *Rooker-Feldman* doctrine to the extent he challenges Judge Stormont's orders extending a permanent injunction in the state case, and his claims for declaratory and injunctive relief relating to ongoing contempt proceedings are barred by the *Younger* abstention doctrine. Further, Judge Stormont is entitled to judicial immunity from Mr. Miller's federal claims for monetary damages, and Mr. Miller fails to state plausible civil rights claims against the

---

[3] (Def. Stormont's Mot. to Dismiss & Mem. in Support (Stormont MTD), Doc. No. 22.)

[4] (Mot. to Dismiss Pl.'s Compl. With Prejudice (Strassberg MTD), Doc. No. 25; Defs.' Jack Elbaum, NPEC, LLC, and Glyde Solar's Mot. to Dismiss Pl.'s Compl. With Prejudice (Elbaum Parties' MTD), Doc. No. 26.)

[5] (Pl.'s Resp. to Def. Charles A. Stormont's Mot. to Dismiss Compl. (Opp'n to Stormont MTD), Doc. No. 31; Pl.'s Resp. to Def. Evan S. Strassberg's Mot. to Dismiss Compl. (Opp'n to Strassberg MTD), Doc. No. 30; Pl.'s Resp. to Defs. Jack Elbaum, NPEC, LLC, & Glyde Solar's Mot. to Dismiss Pl.'s Compl. With Prejudice (Opp'n to Elbaum Parties' MTD), Doc. No. 32.)

[6] (Pl.'s Mot. for Prelim. Inj. & Supporting Mem., Doc. No. 37.)

other defendants. And because all federal claims must be dismissed, the court should decline to exercise jurisdiction over Mr. Miller's state law claims. Accordingly, the undersigned[7] recommends the district judge grant the motions to dismiss, deny Mr. Miller's motion for preliminary injunction, dismiss the federal damages claims against Judge Stormont with prejudice, and dismiss all other claims without prejudice.

## BACKGROUND[8]

Mr. Miller's claims relate to a civil case his former employer, NPEC, filed against him in Utah state court in 2013 (*NPEC v. Miller*).[9] Judge Stormont has presided over the case since May 16, 2024.[10]

In 2014, Mr. Miller and NPEC entered into a settlement agreement requiring him to "refrain from any communications of any kind" about NPEC and its CEO, Jack

[7] This case is referred to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B). (*See* Doc. No. 28.)

[8] The following facts are from the complaint, the exhibits attached to the complaint, and records from the state court proceedings referenced in the complaint. Relying on these materials does not require converting the motions to dismiss into motions for summary judgment. *See Brown v. City of Tulsa*, 124 F.4th 1251, 1263–64 (10th Cir. 2025) (explaining "documents attached to the complaint as exhibits" and "matters subject to judicial notice" are exceptions to the rule that courts must only review the complaint on a motion to dismiss); *Hodgson v. Farmington City*, 675 F. App'x 838, 840–41 (10th Cir. 2017) (unpublished) (explaining that facts subject to judicial notice include "another court's publicly filed records concerning matters that bear directly upon the disposition of the case at hand").

[9] *See NPEC, LLC v. Gregory R. Miller*, No. 130905131 (Utah 3d Dist. Ct., filed Aug. 8, 2013) (*NPEC v. Miller*); (*see also* Compl. ¶ 1, Doc. No. 1).

[10] (Compl. ¶¶ 2, 51, Doc. No. 1.)

Elbaum.[11] In January 2016, the court entered a final judgment which included a permanent injunction. It enjoined Mr. Miller "through the termination date in the parties' Settlement Agreement (May 31, 2024), from . . . making or encouraging another person to make any negative, derogatory, or defamatory comments or statements about the NPEC Parties," including NPEC and Mr. Elbaum, "except as necessary to defend himself in court proceedings, from criminal charges."[12]

In March 2024, NPEC filed a motion to extend the permanent injunction.[13] In May 2024, the case was reassigned to Judge Stormont.[14] The 2016 permanent injunction expired on June 1, 2024.[15] Mr. Miller contends Judge Stormont "lost all jurisdiction over *NPEC v. Miller*" on that date.[16] But on August 5, 2024, Judge Stormont entered an order retroactively extending the expired 2016 permanent injunction through May 31, 2025.[17]

---

[11] (*Id.* ¶¶ 3, 38–39.)

[12] (*Id.* ¶ 42.)

[13] (*Id.* ¶ 50.)

[14] (*Id.* ¶ 51.)

[15] (*Id.* ¶ 52.)

[16] (*Id.* ¶ 68.)

[17] (*Id.* ¶ 58; Ex. A to Opp'n to Stormont MTD, *NPEC v. Miller*, No. 130905131, Order on NPEC's Mot. to Extend Permanent Inj. (Utah 3d Dist. Ct. Aug. 5, 2024), Doc. No. 31-1.) Judge Stormont found he had inherent authority to extend the permanent injunction, citing a Utah Supreme Court decision holding "[d]istrict courts retain the power to modify even a final injunctive decree." *Little Cottonwood Tanner Ditch Co. v. Sandy City*, 2016 UT 45, ¶ 19, 387 P.3d 978, 981.

Judge Stormont has since entered several contempt orders against Mr. Miller predicated on the August 5, 2024 order.[18] These include orders jailing Mr. Miller for ninety days, requiring him to pay NPEC's attorney fees associated with contempt hearings, and requiring him to pay fines of $100 per day and, later, $200 per day, until he complied with the August 5, 2024 order.[19] And on July 31, 2025, Judge Stormont again extended the 2016 permanent injunction.[20]

In September 2025, Mr. Miller filed this action against Judge Stormont, NPEC, Mr. Elbaum, Evan Strassberg (NPEC's attorney in the state case), and Glyde Solar LLC (another business run by Mr. Elbaum). Mr. Miller contends Judge Stormont lacked subject-matter jurisdiction to extend the expired 2016 injunction, and the extended injunction is an unconstitutional prior restraint on speech.[21] He also alleges the defendants conspired to violate his civil rights, "motivated by invidious racial discrimination, where Defendants Judge Stormont, Jack Elbaum and Evan Strassberg are Jew[ish] and Miller is not."[22] Mr. Miller asserts claims against all defendants for impairment of his contract rights under 42 U.S.C. § 1981, violations of his First and Fourteenth Amendment rights under 42 U.S.C. § 1983, conspiracy to interfere with his

---

[18] (Compl. ¶ 60, Doc. No. 1.)

[19] (*Id.* ¶¶ 60–66.)

[20] (*Id.* ¶ 67; Ex. B to Opp'n to Stormont MTD, *NPEC v. Miller*, No. 130905131, Order (Utah 3d Dist. Ct. July 31, 2025), Doc. No. 31-2.)

[21] (Compl. ¶¶ 69–78, 81, Doc. No. 1.)

[22] (*Id.* ¶ 22.)

civil rights under 42 U.S.C. § 1985(3), neglect or refusal to prevent conspiracy to interfere with his civil rights under 42 U.S.C. § 1986, and intentional infliction of emotional distress.[23] He seeks a declaratory judgment stating Judge Stormont acted without jurisdiction in *NPEC v. Miller* and violated his constitutional rights; an injunction prohibiting the defendants from entering or enforcing any order purporting to alter the 2016 permanent injunction in that case and prohibiting them from violating Mr. Miller's civil rights; compensatory and "exemplary" damages; and attorney fees and costs.[24]

As of the date of this report, enforcement and contempt proceedings remain ongoing, with a show cause hearing set for August 17, 2026.[25]

## LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows dismissal of a case for "lack of subject-matter jurisdiction."[26] A motion to dismiss under Rule 12(b)(1) may take one of two forms—a facial attack or a factual attack.[27] "A facial attack looks only to the factual allegations of the complaint in challenging the court's jurisdiction."[28] "A factual attack, on the other hand, goes beyond the factual allegations of the complaint

---

[23] (*Id.* ¶¶ 162–212.)

[24] (*Id.* at 44.)

[25] *See* Docket, *NPEC v. Miller*, No. 130905131 (Utah 3d Dist. Ct.).

[26] Fed. R. Civ. P. 12(b)(1).

[27] *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1272 n.1 (10th Cir. 2012).

[28] *Id.* (internal quotation marks omitted).

and presents evidence in the form of affidavits or otherwise to challenge the court's jurisdiction."[29]

Judge Stormont brings a facial attack because he bases his jurisdictional arguments solely on the allegations in the complaint, as well as state court records subject to judicial notice.[30] When a dismissal motion presents a facial attack, the court applies the standards applicable to a Rule 12(b)(6) motion and accepts the allegations in the complaint as true.[31] The other defendants rely on outside evidence in arguing Mr. Miller lacks standing.[32] But the court need not consider this evidence because their standing argument fails on other grounds, as explained below. Accordingly, this report and recommendation relies solely on the complaint, its exhibits, and state court records subject to judicial notice.

---

[29] *Id.* (internal quotation marks omitted).

[30] *See Thurman v. Steidley*, No. 16-cv-554, 2017 U.S. Dist. LEXIS 85725, at *11 (N.D. Okla. June 5, 2017) (unpublished) (concluding a Rule 12(b)(1) motion to dismiss relying on state court records subject to judicial notice presented a facial attack); *Mackley v. Davis*, No. 1:13-cv-00129, 2014 U.S. Dist. LEXIS 66115, at *4 (D. Utah Apr. 25, 2014) (unpublished) (same); *see also St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

[31] *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

[32] (*See* Strassberg MTD 1, 5–8, Doc. No. 25; Elbaum Parties' MTD 1, 6–8, Doc. No. 26.) Specifically, they provide evidence that NPEC purchased Mr. Miller's right to sue at a sheriff's sale to satisfy a judgment. (*See* Exs. B–D to Strassberg MTD, Doc. Nos. 25-2–25-4; Exs. B–D to Elbaum Parties' MTD, Doc. Nos. 26-2–26-4.)

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."[33] To avoid dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[34] Courts accept well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor.[35] But a court need not accept a plaintiff's conclusory allegations as true.[36] "[A] plaintiff must offer specific factual allegations to support each claim,"[37] and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[38] Records of court proceedings which bear directly on a plaintiff's claims are subject to judicial notice and may be considered without converting a Rule 12(b)(6) motion to a motion for summary judgment.[39]

Because Mr. Miller proceeds pro se (without an attorney), his filings are liberally construed and held "to a less stringent standard than formal pleadings drafted by

---

[33] Fed. R. Civ. P. 12(b)(6).

[34] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[35] *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

[36] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[37] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

[38] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

[39] *See Brown*, 124 F.4th at 1263–64; *Hodgson*, 675 F. App'x at 840–41.

lawyers."[40] Still, pro se plaintiffs must follow the same procedural rules as other litigants.[41] For instance, a pro se plaintiff "still has the burden of alleging sufficient facts on which a recognized legal claim could be based."[42] While courts make some allowances for a pro se plaintiff's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements,"[43] courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[44]

## DISCUSSION

### I. Judge Stormont's Motion to Dismiss

Judge Stormont moves to dismiss based on judicial immunity, the *Rooker-Feldman* and *Younger* doctrines, the statutory bar on injunctive relief against judges in 42 U.S.C. § 1983, and failure to comply with the Utah Governmental Immunity Act[45] (as to the state law claim).[46] As explained below, Judge Stormont is entitled to judicial immunity from Mr. Miller's federal damages claims. Mr. Miller's claims for

---

[40] *Hall*, 935 F.2d at 1110.

[41] *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

[42] *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (internal quotation marks omitted).

[43] *Hall*, 935 F.2d at 1110.

[44] *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (citation omitted).

[45] Utah Code Ann. §§ 63G-7-101, et seq.

[46] (Stormont MTD 1–2, Doc. No. 22.)

declaratory and injunctive relief relating to *NPEC v. Miller* are barred by the *Rooker-Feldman* doctrine (to the extent he challenges Judge Stormont's orders extending the permanent injunction), and by the *Younger* abstention doctrine (to the extent he challenges the ongoing contempt proceedings). Mr. Miller's request for injunctive relief against Judge Stormont is also barred by 42 U.S.C. § 1983. And where all federal claims must be dismissed, the court should decline to exercise jurisdiction over Mr. Miller's state law claims. Accordingly, all claims against Judge Stormont must be dismissed.

A. Judicial Immunity from Federal Damages Claims

"[G]enerally, a judge is immune from a suit for money damages,"[47] including those brought under § 1983.[48] "This immunity 'protects judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants.'"[49] "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority."[50] "The only exceptions to judicial immunity are for 'actions not taken in the judge's judicial capacity' and 'for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'"[51]

---

[47] *Mireles v. Waco*, 502 U.S. 9, 9 (1991).

[48] *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

[49] *Bradley v. Gray*, 78 F. App'x 84, 85 (10th Cir. 2003) (unpublished) (quoting *Forrester v. White*, 484 U.S. 219, 225 (1988)).

[50] *Stump*, 435 U.S. at 356.

[51] *Sherratt v. Braithwaite*, No. 24-4101, 2026 U.S. App. LEXIS 11580, at *8 (10th Cir. Apr. 23, 2026) (unpublished) (quoting *Mireles*, 502 U.S. at 11–12).

Mr. Miller does not allege any action by Judge Stormont outside his judicial capacity. But Mr. Miller argues the second exception applies because Judge Stormont lacked jurisdiction to extend the permanent injunction in *NPEC v. Miller* after its May 31, 2024 expiration date.[52] However, this allegation does not establish that Judge Stormont acted in the complete absence of all jurisdiction. The second exception applies only when a judge acts in the "clear absence of all jurisdiction over the *subject-matter*,"[53] and "clearly without any colorable claim of jurisdiction."[54]

Here, Judge Stormont ruled on a party's motion to extend an injunction in a case pending before him. Mr. Miller does not allege Judge Stormont lacked jurisdiction over the type of case or motion at issue. Indeed, under the Utah Constitution, Judge Stormont, as a district court judge, had "original jurisdiction in all matters" except as limited by the constitution or statute.[55] Mr. Miller's assertion that Judge Stormont lacked

---

[52] (*See* Opp'n to Stormont MTD 1–4, Doc. No. 31; Compl. ¶¶ 68–78, Doc. No. 1.)

[53] *Charlotte v. Hansen*, 433 F. App' x 660, 661 (10th Cir. 2011) (unpublished) (emphasis added) (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)). The Supreme Court has distinguished this from actions taken in excess of jurisdiction with the following example:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Stump*, 435 U.S. at 357 n.7 (citing *Bradley*, 80 U.S. at 352).

[54] *Ellibee v. Fox*, 244 F. App'x 839, 844 (10th Cir. 2007) (unpublished) (citation omitted).

[55] Utah Const. art. VIII, § 5.

authority to extend the injunction after it expired is, at most, an allegation that he acted in excess of his jurisdiction. Mr. Miller has not plausibly alleged Judge Stormont acted "without any colorable claim of jurisdiction."[56]

Accordingly, Judge Stormont is entitled to absolute judicial immunity from Mr. Miller's personal capacity claims for monetary damages. Mr. Miller's federal damages claims should be dismissed with prejudice. [57]

B. Claims for Declaratory and Injunctive Relief

To the extent Mr. Miller also seeks declaratory or injunctive relief against Judge Stormont, this relief is barred under the *Rooker-Feldman* doctrine, the *Younger* abstention doctrine, and 42 U.S.C. § 1983. Each is addressed in turn.

*1.* Rooker-Feldman *Doctrine*[58]

First, the *Rooker-Feldman* doctrine prohibits Mr. Miller from pursuing a federal court action challenging Judge Stormont's extension of the permanent injunction in *NPEC v. Miller*. Under the *Rooker-Feldman* doctrine, "federal courts, other than the

---

56 *Ellibee*, 244 F. App'x at 844.

57 As addressed below, the court should decline to exercise jurisdiction over Mr. Miller's state law claim for intentional infliction of emotional distress.

58 In his motion, Judge Stormont references the *Rooker-Feldman* doctrine in introductory sections but makes no substantive argument relating to it. (*See* Stormont MTD at ii, 2, 6, Doc. No. 22.) Because of this, Mr. Miller contends Judge Stormont abandoned any *Rooker-Feldman* argument. (Opp'n to Stormont MTD 12–13, Doc. No. 31.) Regardless of whether Judge Stormont adequately raised this issue, the court must "sua sponte consider potential jurisdictional defects like the Rooker-Feldman doctrine." *Rivers v. Colorado*, No. 23-1279, 2024 U.S. App. LEXIS 11275, at *4 (10th Cir. May 8, 2024) (unpublished). Accordingly, the court considers whether this doctrine bars Mr. Miller's claims.

United States Supreme Court, lack jurisdiction to adjudicate claims seeking review of state court judgments."[59] In other words, "[t]he losing party in a state court proceeding is generally 'barred from seeking what in substance would be appellate review of the state court judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'"[60]

Mr. Miller seeks a declaration that Judge Stormont lacked jurisdiction to extend the 2016 permanent injunction and violated his constitutional rights by extending it—and he seeks to prohibit enforcement of any order purporting to alter the 2016 injunction.[61] This amounts to a request for appellate review of a state court judgment, which *Rooker-Feldman* prohibits.[62] Accordingly, this court lacks jurisdiction over Mr. Miller's claims for declaratory and injunctive relief challenging Judge Stormont's extension of the injunction in *NPEC v. Miller*.[63]

---

[59] *Bisbee v. McCarty*, 3 F. App'x 819, 822 (10th Cir. 2001) (unpublished) (citing *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 486 (1982); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 415–16 (1923)).

[60] *Id.* (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994)).

[61] (Compl. 44, Doc. No. 1.)

[62] *See Balderama v. Bulman*, No. 25-2101, 2026 U.S. App. LEXIS 14536, at *6–7 (10th Cir. May 21, 2026) (unpublished) (finding *Rooker-Feldman* barred federal claim seeking to enjoin enforcement of a state court order).

[63] In his oppositions to the other defendants' motions to dismiss, Mr. Miller argues *Rooker-Feldman* does not apply because he was pursuing state appeals of the extension orders when he filed this federal action. (*See* Opp'n to Strassberg MTD 11–12, Doc. No. 30; Opp'n to Elbaum Parties' MTD 11–12, Doc. No. 32.) He relies on the Tenth Circuit's decision in *Guttman v. G.T.S. Khalsa*, 446 F.3d 1027 (10th Cir. 2006), holding a state proceeding was not final, and *Rooker-Feldman* did not apply, because a

*2.* Younger *Abstention*

Next, the *Younger* abstention doctrine bars Mr. Miller's claims for declaratory and injunctive relief relating to the ongoing enforcement and contempt proceedings in *NPEC v. Miller.*

"*Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings—when such relief could adequately be sought before the state court."[64] *Younger* abstention only applies to three "exceptional" categories of state proceedings—(i) state criminal prosecutions; (ii) certain "civil enforcement proceedings"; and (iii) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."[65] These categories, known as the *Sprint* categories, define *Younger*'s scope.[66] If a case falls within one of the *Sprint*

---

state court appeal was pending when the federal action was filed. *Id.* at 1032. But the Supreme Court recently held the *Rooker Feldman* doctrine bars claims seeking federal review of state court judgments even if the state order is "subject to further review in state appellate proceedings." *T.M. v. Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739, 1744, 1751–52 (2026). Accordingly, the *Rooker-Feldman* doctrine applies regardless of whether state appeals were pending when this federal action was filed.

[64] *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999) (citation omitted).

[65] *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 367–68 (1989)).

[66] *See Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024) (explaining "the possibility of *Younger* abstention is triggered *only when* the state proceeding" falls into one of the *Sprint* categories).

categories, federal courts must abstain from hearing it where three conditions exist: "(1) an ongoing state judicial . . . proceeding, (2) the presence of an important state interest, and (3) an adequate opportunity to raise federal claims in the state proceedings."[67]

The ongoing contempt proceedings in *NPEC v. Miller* fall into the third *Sprint* category—proceedings involving orders "uniquely in furtherance of the state courts' ability to perform their judicial functions."[68] This category includes "orders and processes that 'lie[] at the core of the administration of a State's judicial system' and through which the state 'vindicates the regular operation of its judicial system,'" such as contempt proceedings.[69] Accordingly, the ongoing contempt proceedings addressing Mr. Miller's alleged violations of the state court injunctions fall into this category.

The other three conditions for *Younger* abstention are also met. First, the contempt proceedings were ongoing when Mr. Miller filed this federal action and remain ongoing.[70] Second, the Supreme Court has recognized a state's "interest in the contempt process, through which it vindicates the regular operation of its judicial system," qualifies as "an important interest."[71] Third, Mr. Miller has not shown he lacks

---

[67] *Id.* (alteration in original) (citation omitted).

[68] *Sprint*, 571 U.S. at 73.

[69] *Covington v. Humphries*, No. 24-1158, 2025 U.S. App. LEXIS 12172, at *10 (10th Cir. May 19, 2025) (unpublished) (alteration in original) (quoting *Juidice v. Vail*, 430 U.S. 327, 335 (1977)); *see also Courthouse News Serv. v. N.M. Admin. Off. of Cts.*, 53 F.4th 1245, 1257 (10th Cir. 2022) (holding the third *Sprint* category includes state court contempt proceedings).

[70] *See* Docket, *NPEC v. Miller*, No. 130905131 (Utah 3d Dist. Ct.).

[71] *Juidice*, 430 U.S. at 335.

an adequate opportunity to raise federal claims in the state proceedings.[72] "[U]nless state law clearly bars the interposition of the federal statutory and constitutional claims, a plaintiff typically has an adequate opportunity to raise federal claims in state court."[73] Mr. Miller has not shown Utah law prohibits him from raising federal constitutional claims in state court. Indeed, the record shows Judge Stormont has considered Mr. Miller's federal constitutional arguments.[74] The fact that Mr. Miller's arguments did not prevail does render the state forum inadequate.[75]

Even if all *Younger* conditions are met, abstention is not required if a "state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is flagrantly and patently violative of express constitution prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it."[76] But these exceptions provide only "a

---

[72] *See Chapman v. Barcus*, 372 F. App'x 899, 902 (10th Cir. 2010) (unpublished) (explaining that, for *Younger*'s second condition, "it is a plaintiff's burden to establish that state law prevents him from presenting his federal claims in state proceedings").

[73] *Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019) (internal quotation marks omitted).

[74] (*See, e.g.*, Ex. A to Opp'n to Stormont MTD, *NPEC v. Miller*, No. 130905131, Order on NPEC's Mot. to Extend Permanent Inj. (Utah 3d Dist. Ct. Aug. 5, 2024), Doc. No. 31-1 (rejecting Mr. Miller's First Amendment objections to the extension of the permanent injunction).)

[75] *See Winn*, 945 F.3d at 1258 ("*Younger* requires only the availability of an *adequate* state-court forum, not a favorable result in the state forum.").

[76] *Moore v. Sims*, 442 U.S. 415, 424 (1979) (internal quotation marks omitted).

very narrow gate for federal intervention,"[77] and plaintiffs bear a "heavy burden" to show they apply.[78] A plaintiff must establish the first exception with evidence, not "mere allegations of bad faith or harassment."[79] Although Mr. Miller is not challenging a criminal proceeding, the factors courts consider in the context of criminal prosecutions are instructive:

> (1) whether it was frivolous or undertaken with no reasonably objective hope of success; (2) whether it was motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions.[80]

But "merely alleging animus, ill-will, or a history of personal animosity is insufficient to overcome the bar of *Younger*."[81]

Mr. Miller has not shown any exception to *Younger* abstention applies. He does not allege he is being prosecuted under a flagrantly unconstitutional statute. And while he contends Judge Stormont's orders violate his constitutional rights, he has not shown he lacks an adequate opportunity to present this claim in state court. Further, his

[77] *Phelps v. Hamilton (Phelps I)*, 59 F.3d 1058, 1064 (10th Cir. 1995) (citation omitted).

[78] *Id.* at 1066.

[79] *Phelps v. Hamilton (Phelps II)*, 122 F.3d 885, 889–90 (10th Cir. 1997); *see also Peters v. United States*, No. 24-1013, 2024 U.S. App. LEXIS 15197, at *9 (10th Cir. June 21, 2024) (unpublished) ("The plaintiff must set forth 'more than mere allegations of bad faith or harassment' through 'additional, supplemental evidence.'" (quoting *Phelps II*, 122 F.3d at 889–90)).

[80] *Phelps II*, 122 F.3d at 889.

[81] *Merrill v. Ito*, No. 2:23-cv-00508, 2023 U.S. Dist. LEXIS 187680, at *9 (D. Utah Oct. 18, 2023) (unpublished) (citing *Phelps II*, 122 F.3d at 889–90).

allegations regarding bad faith and harassment are conclusory and unsupported by evidence. In his opposition, Mr. Miller relies on his allegation that the defendants were "motivated by invidious racial discrimination, where Defendants Judge Stormont, Jack Elbaum and Evan Strassberg are Jew[ish] and Miller is not."[82] But "[m]ere differences in race [or ethnicity] do not, by themselves, support an inference of racial animus."[83] Mr. Miller does not allege facts (or provide evidence) demonstrating the contempt proceedings are motivated by racial, religious, or other class-based animus.

Mr. Miller also argues "evidence of harassment and bad faith is found in Judge Stormont's orders."[84] Specifically, he contends:

- Judge Stormont improperly extended the 2016 injunction in August 2024 despite no recent findings of contempt;
- the retroactive extension "ensnared" Mr. Miller by placing him in immediate violation for his conduct after the injunction expired;
- the July 2025 extension order improperly revised the basis for the August 2024 extension, including by making "false and wholly unsupported" findings that Mr. Miller was violating the injunction at the time NPEC moved to extend it; and

---

[82] (Compl. ¶ 22, Doc. No. 1.)

[83] *Green v. Corr. Corp. of Am.*, 401 F. App'x 371, 376 (10th Cir. 2010) (unpublished).

[84] (Opp'n to Stormont MTD 9, Doc. No. 31.)

- Judge Stormont improperly treated Mr. Miller's request for a hearing, in compliance with instructions on a court form, as evidence of vexatious conduct and grounds for "possible contempt."[85]

Even accepting Mr. Miller's characterizations, these orders do not reveal bad faith or harassment for purposes of a *Younger* exception. Mr. Miller has not shown the contempt proceedings as a whole are "frivolous or undertaken with no reasonably objective hope of success."[86] For example, while he contends there were no violations justifying the original August 2024 extension, he does not contest the court's July 2025 finding that he continued to violate the injunction even *after* the extension, resulting in at least ten contempt findings.[87] (Indeed, Mr. Miller acknowledges he maintains a website and Facebook page accusing Mr. Elbaum and his companies of fraud and criminal conduct.)[88] And while he claims the injunction and contempt orders violate his constitutional rights, he does not plausibly allege retaliation for his exercise of constitutional rights motivated the proceedings.[89] Finally, Mr. Miller has not

---

[85] (*Id.* at 9–11.)

[86] *Phelps II*, 122 F.3d at 889.

[87] (*See* Ex. B to Opp'n to Stormont MTD, *NPEC v. Miller*, No. 130905131, Order 3–4 (Utah 3d Dist. Ct. July 31, 2025), Doc. No. 31-2 ("NPEC has provided evidence . . . of continued and ongoing violations of the order . . . and, frankly, disturbing threats that have caused the NPEC parties to fear for their own safety.").)

[88] (Compl. ¶¶ 87–90, Doc. No. 1.)

[89] *See Phelps I*, 59 F.3d at 1066 (noting a plaintiff must prove "retaliation was a major motivating factor and played a dominant role in the decision to prosecute" (citation omitted)).

demonstrated "unjustified and oppressive use of multiple prosecutions."[90] While the court has found him in contempt numerous times, he has not plausibly alleged these findings are unjustified. Accordingly, Mr. Miller has not shown circumstances supporting an exception to *Younger* abstention.

Where the *Younger* doctrine applies to the ongoing contempt proceedings, and no exception exists here, Mr. Miller's claims for declaratory and injunctive relief relating to the ongoing state proceedings must be dismissed without prejudice.

*3. Statutory Bar Under 42 U.S.C. § 1983*

Even if *Younger* did not apply, Mr. Miller's request for injunctive relief against Judge Stormont would be barred by 42 U.S.C § 1983. Specifically, § 1983 states: "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."[91] Mr. Miller does not allege any act by Judge Stormont outside his judicial capacity, he does not claim Judge Stormont violated a declaratory decree, and he has not shown declaratory relief is unavailable in state court. As noted, the state court has addressed Mr. Miller's constitutional arguments, and the fact that his arguments did not prevail does not render relief unavailable. Accordingly, neither statutory exception applies, and § 1983 bars Mr. Miller's claim for injunctive relief against Judge Stormont.

---

[90] *Phelps II*, 122 F.3d at 889.

[91] 42 U.S.C. § 1983.

C. State Law Claim

Finally, Judge Stormont argues Mr. Miller's state law claim for intentional infliction of emotional distress must be dismissed for failure to comply with the notice requirements of the Utah Governmental Immunity Act.[92] As explained further below, the undersigned recommends dismissal of all federal claims in this action. "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."[93] Therefore, Judge Stormont's argument based on the Utah Governmental Immunity Act need not be addressed. Instead, the court should decline to exercise supplemental jurisdiction over Mr. Miller's state law claim and dismiss it without prejudice.

**II. Evan Strassberg's and the Elbaum Parties' Motions to Dismiss**

Mr. Strassberg and the Elbaum Parties move to dismiss on several grounds. First, they argue Mr. Miller lacks standing to sue because NPEC purchased Mr. Miller's claims in a public sale.[94] Next, they argue the *Rooker-Feldman* doctrine and the doctrine of issue preclusion bar Mr. Miller's claims challenging the extension of the permanent injunction.[95] They also argue Mr. Miller fails to state a federal civil rights claim against them because they are not state actors and Mr. Miller's allegations of

---

[92] (Stormont MTD 13–15, Doc. No. 22.)

[93] *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998).

[94] (Strassberg MTD 1, 5–8, Doc. No. 25; Elbaum Parties' MTD 1, 6–8, Doc. No. 26.)

[95] (Strassberg MTD 1, 8–13, Doc. No. 25; Elbaum Parties' MTD 1, 8–12, Doc. No. 26.)

conspiracy and discriminatory animus are conclusory.[96] Alternatively, they contend the damages claims should be stayed under the *Younger* abstention doctrine.[97] Finally, they ask the court to decline to exercise supplemental jurisdiction over the remaining state law claim.[98]

As explained below, Mr. Strassberg's and the Elbaum Parties' standing argument fails because they have not shown Mr. Miller's civil rights claims are transferable. However, they are correct that *Rooker-Feldman* bars Mr. Miller's challenge to the injunction extension, Mr. Miller fails to state a plausible civil rights claim against them, and the court should decline to exercise jurisdiction over the state law claim. Accordingly, the undersigned recommends the district judge dismiss Mr. Miller's claims against Mr. Strassberg and the Elbaum Parties without prejudice.

A. <u>Standing</u>

Mr. Strassberg and the Elbaum Parties argue Mr. Miller lacks standing to sue because NPEC purchased all his legal claims in a public sale ordered by the state court to satisfy a judgment against Mr. Miller.[99] In support of this claim, they rely on the Tenth Circuit's decision in *RMA Ventures California v. SunAmerica Life Insurance Company*[100]

---

[96] (Strassberg MTD 1, 14–18, Doc. No. 25; Elbaum Parties' MTD 1, 12–19, Doc. No. 26.)

[97] (Strassberg MTD 1, 19–21, Doc. No. 25; Elbaum Parties' MTD 19–20, Doc. No. 26.)

[98] (Strassberg MTD 1, 18–19, Doc. No. 25; Elbaum Parties' MTD 1, Doc. No. 26.)

[99] (Strassberg MTD 1, 5–8, Doc. No. 25; Elbaum Parties' MTD 1, 6–8, Doc. No. 26.)

[100] 576 F.3d 1070 (10th Cir. 2009).

and Utah Supreme Court authority holding that "choses in action" (legal claims) are generally subject to attachment and execution by a creditor.[101] But as Mr. Miller points out, these cases involved execution and sale of contract claims or claims arising from arms-length business transactions.[102] Here, by contrast, Mr. Miller brings federal civil rights claims against the defendants. As Mr. Miller notes, such claims are treated as analogous to personal injury claims,[103] which are not assignable or transferrable under Utah law.[104] Following this rationale, courts applying Utah law to this issue have concluded § 1983 claims are not assignable.[105] In their replies, the defendants identify

---

[101] *See Applied Med. Techs. v. Eames*, 2002 UT 18, ¶¶ 12, 17, 44 P.3d 699, 701–03; *Bradburn v. Alarm Prot. Tech., LLC*, 2019 UT 33, ¶ 17, 449 P.3d 20, 23.

[102] *RMA Ventures Cal.*, 576 F.3d at 1071, 1075 (finding a plaintiff lacked standing to pursue an appeal where the defendants purchased the plaintiff's underlying claims for breach of contract and misrepresentation at an execution sale to satisfy the defendants' award of attorney's fees); *Applied Med. Techs.*, 2002 UT 18, ¶ 21, 44 P.3d at 704 (finding a creditor's purchase of a debtor's claims against the creditor did not violate public policy where the claims arose from "an arms-length business transaction"); *Bradburn*, 2019 UT 33, ¶¶ 3, 17, 449 P.3d at 21, 23 (holding a plaintiff no longer had a right to pursue breach of contract and related claims against his former employer, where the employer purchased the claims at an execution sale).

[103] *See Wilson v. Garcia*, 471 U.S. 261, 277 (1985) (finding civil rights claims "more analogous to tort claims for personal injury than, for example, to claims for damages to property or breach of contract").

[104] *See Gilbert v. DHC Dev., LLC*, No. 2:08-cv-00258, 2013 U.S. Dist. LEXIS 131321, at *46–48 (D. Utah Sept. 12, 2013) (unpublished).

[105] *See Tracy v. Simplifi*, No. 2:21-cv-0444, 2022 U.S. Dist. LEXIS 54435, at *7 (D. Utah Jan. 18, 2022) (unpublished) ("Section 1983 claims cannot be assigned under Utah law, which law is applied to actions in this Court."); *Am. Charities for Reasonable Fundraising Regulation, Inc. v. O'Bannon*, No. 2:08-cv-00875, 2016 U.S. Dist. LEXIS 124842, at *16 (D. Utah Sept. 13, 2016) (unpublished) (noting state law governs the transferability of civil rights claims if "not inconsistent with the goals of the civil rights laws," and finding personal injury claims nonassignable under Utah law).

no contrary legal authority.[106] Therefore, the civil rights claims at issue in this case were not subject to execution, and Mr. Miller does not lack standing to pursue these claims.

B. *Rooker-Feldman* Doctrine

Mr. Strassberg and the Elbaum Parties argue the *Rooker-Feldman* doctrine bars Mr. Miller's claims, and the doctrine of issue preclusion bars any challenge to the August 2024 extension of the 2016 injunction.[107] For the reasons explained above (in the analysis of Judge Stormont's motion), the *Rooker-Feldman* doctrine bars Mr. Miller's claims challenging the validity and constitutionality of state court orders extending the 2016 injunction—and Mr. Miller's request to enjoin enforcement of those orders.[108] Because of this, the defendants' issue preclusion argument need not be addressed. But it is not apparent *Rooker-Feldman* bars all claims against Mr. Strassberg and the Elbaum Parties in this action—particularly the civil rights claims relating to the ongoing

---

[106] Mr. Strassberg's reply does not pursue the standing argument. (*See* Strassberg Reply, Doc. No. 34.) And the Elbaum Parties' reply focuses on Mr. Miller's argument that the judgment underlying the execution sale was void. (*See* Elbaum Parties' Reply 4–5, Doc. No. 36.)

[107] (Strassberg MTD 1, 8–13, Doc. No. 25; Elbaum Parties' MTD 1, 8–12, Doc. No. 26.)

[108] As noted above, Mr. Miller's argument that the pendency of state court appeals precludes application of the *Rooker-Feldman* doctrine fails under the Supreme Court's recent decision in *T.M. v. University of Maryland Medical System Corp.*,146 S. Ct. at 1744, 1751–52 (holding the *Rooker-Feldman* doctrine bars federal district courts from reviewing state court judgments even if they are subject to further review in state appellate proceedings).

contempt proceedings. Accordingly, the defendants' other arguments for dismissal are considered next.

C. *Younger* Abstention

Because it is jurisdictional, the defendants' argument that Mr. Miller's civil rights claims should be stayed under the *Younger* doctrine is addressed first, before the merits of those claims.

As explained above, the *Younger* doctrine bars Mr. Miller's claims for declaratory and injunctive relief relating to the ongoing contempt proceedings, and these claims must be dismissed. But that analysis does not address *Younger*'s applicability to the damages claims against Mr. Strassberg and the Elbaum Parties. *Younger* abstention "extends to federal claims for monetary relief when a judgment for the plaintiff would have preclusive effects on a pending state-court proceeding."[109] Generally, federal damages claims may not be dismissed under *Younger* but, instead, should be stayed until the state proceedings are final.[110] But where damages claims are brought against defendants who cannot be held liable under 42 U.S.C. § 1983, or the claims are otherwise facially deficient or frivolous, the Tenth Circuit has endorsed dismissal on these other grounds in lieu of a stay.[111]

---

[109] *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004).

[110] *Id.*

[111] *See, e.g.*, *Fetzer v. Raemisch*, 803 F. App'x 181, 183–85 (10th Cir. 2020) (unpublished) (affirming decision to dismiss damages claim as frivolous in lieu of applying *Younger* abstention); *Carbajal v. Hollman*, 485 F. App'x 332, 332–33 (10th Cir. 2012) (unpublished) (concluding damages claims dismissed under *Younger* were more

Here, as explained below, Mr. Miller's civil rights claims against Mr. Strassberg and the Elbaum Parties fail because (1) they are not state actors under § 1983, and (2) he makes only conclusory allegations of conspiracy and discriminatory animus. Under these circumstances, dismissal on these grounds is appropriate, and a stay under *Younger* is not needed.

D. Failure to State a Claim Under Civil Rights Statutes

Mr. Strassberg and the Elbaum Parties argue Mr. Miller fails to state a claim under any of federal civil rights statutes he relies on: 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986.[112] The defendants are correct.

*1. 42 U.S.C. § 1983*

Mr. Miller does not state a plausible § 1983 claim against Mr. Strassberg or the Elbaum Parties because he does not allege facts showing they are state actors. To state a claim under § 1983, a plaintiff must allege "(1) deprivation of a federal right by (2) a person acting under color of state law."[113] "The Tenth Circuit has set forth four

---

appropriately dismissed on "alternate grounds that present a complete bar to relief," namely, prosecutorial immunity and "lack of a legal basis" to hold a board of county commissioners liable); *Esquibel v. Williamson*, 421 F. App'x 813, 816 (10th Cir. 2010) (unpublished) (noting the district court erred in dismissing rather than staying damages claims based on *Younger*, but affirming dismissal on alternate grounds of prosecutorial immunity and failure to state a claim for personal liability against a public defender); *Myers v. Garff*, 876 F.2d 79, 80–81 (10th Cir. 1989) (affirming dismissal of equitable claims based on *Younger* and dismissal of damages claims against a judge based on judicial immunity).

[112] (Strassberg MTD 1, 14–18, Doc. No. 25; Elbaum Parties' MTD 1, 12–19, Doc. No. 26.)

[113] *Watson v. Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988).

tests under which a private actor may be held accountable as a state actor for a constitutional deprivation: (1) the nexus test, (2) the public function test, (3) the joint action test, and (4) the symbiotic relationship test."[114] The only test potentially applicable to Mr. Miller's claims is the "joint action" test, which asks "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights."[115]

Mr. Strassberg, Mr. Elbaum, NPEC, and Glyde Solar are private individuals and companies. And Mr. Miller does not allege facts sufficient to hold these defendants accountable as state actors under the joint action test (or any other test). In his opposition briefs, Mr. Miller claims these defendants "invoked the aid of the Utah state court to seize his property through contempt proceedings that violated his Fourteenth Amendment rights in enforcement of a facially unconstitutional prior restraint on speech."[116] But "a private party does not become a state actor simply by seeking relief through state judicial proceedings."[117] Likewise, "relief under § 1983 cannot be

[114] *Gross v. Samudio*, 630 F. App'x 772, 778 (10th Cir. 2015) (unpublished).

[115] *Id.* at 779 (citation omitted).

[116] (Opp'n to Strassberg MTD 16, Doc. No. 30; Opp'n to Elbaum Parties' MTD 18, Doc. No. 32.)

[117] *Brackhahn v. Beals-Eder*, No. 13-cv-00141, 2013 U.S. Dist. LEXIS 76681, at *15 (D. Colo. May 9, 2013) (unpublished) (citing *Scott v. Hern*, 216 F.3d 897, 906–07 (10th Cir. 2000); *see also Hoai v. Vo*, 935 F.2d 308, 313 (D.C. Cir. 1991) ("It is well established that mere recourse to state or local court procedures does not by itself constitute 'joint activity' with the state sufficient to subject a private party to liability under section 1983.").

premised solely on an argument that a private actor misused available state procedures, particularly in the absence of overt and significant assistance from state officials."[118] Adverse rulings by a state judge in the course of the ordinary judicial process do not qualify.[119] Accordingly, Mr. Miller's allegation that these defendants sought and received relief in state court does not render them state actors for purposes of § 1983.

Because Mr. Miller does not allege facts demonstrating Mr. Strassberg or the Elbaum Parties acted under color of state law, he fails to state a claim against them under § 1983.

*2. 42 U.S.C. § 1985(3)*

Mr. Miller's claim under 42 U.S.C. § 1985(3) fails because he does not allege facts sufficient to show a conspiracy or discriminatory animus.

"To state a claim under § 1985(3), a plaintiff must show: (i) a conspiracy, motivated by racially-discriminatory animus; (ii) to deprive the plaintiff of equal protection or equal protections of the laws; (iii) an act in furtherance of the conspiracy;

---

[118] *Brackhahn*, 2013 U.S. Dist. LEXIS 76681, at *15 (citing *Cobb v. Saturn Land Company, Inc.*, 966 F.2d 1334, 1336–37 (10th Cir. 1992)).

[119] *See Crabtree v. Muchmore*, 904 F.2d 1475, 1481–82 (10th Cir. 1990); *see also id.* at 1480–81 ("When plaintiffs in a civil rights action attempt to assert the necessary element of state action by implicating a state judge in a conspiracy with private defendants, "mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." (internal quotation marks omitted)).

and (iv) an injury or deprivation resulting therefrom."[120] To state a valid claim for conspiracy, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants."[121] "Conclusory allegations that the defendants acted in concert or conspired without specific factual allegations to support such assertions are insufficient."[122] Further, § 1985(3) applies "only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'"[123] In other words, the plaintiff "must be a member of a statutorily protected class, and the actions taken by defendant must stem from plaintiff's membership in the class."[124]

Mr. Miller's allegations of conspiracy are conclusory. He alleges the defendants "agreed among themselves to move Judge Stormont to alter the 2016 final judgment," and had a "meeting of the minds" to deprive him of his constitutional rights.[125] And in his opposition, Mr. Miller points to Judge Stormont's rulings in favor of the defendants to support his conspiracy claim.[126] But "the mere fact that a judge agreed with one party's

---

[120] *Archuleta v. City of Roswell*, 898 F. Supp. 2d 1240, 1248 (D.N.M. 2012).

[121] *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (discussing conspiracy under § 1983).

[122] *Archuleta*, 898 F. Supp. 2d at 1248.

[123] *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 101–02 (1971)).

[124] *Silkwood v. Kerr-McGee Corp.*, 637 F.2d 743, 746 (10th Cir. 1980).

[125] (Compl. ¶¶ 187–92, Doc. No. 1.)

[126] (Opp'n to Strassberg MTD 17–19, Doc. No. 30; Opp'n to Elbaum Parties' MTD 19–21, Doc. No. 32.)

legal arguments is not collusion."[127] Mr. Miller's conspiracy allegations are based solely on parties seeking relief in court, and the court granting them relief. These allegations are insufficient to show an agreement or concerted action between Judge Stormont and the other defendants.

Even if Mr. Miller had adequately alleged a conspiracy, he also fails to allege facts showing any conspiracy was motivated by racial or class-based animus. As noted above, Mr. Miller alleges only that Judge Stormont, Mr. Strassberg, and Mr. Elbaum are Jewish—while Mr. Miller is not.[128] This allegation is insufficient, on its own, to show discriminatory animus.[129] And Mr. Miller alleges no other facts suggesting the defendants were motivated by class-based, discriminatory animus.

For these reasons, Mr. Miller fails to state a plausible conspiracy claim against Mr. Strassberg or the Elbaum Parties under § 1983(3).

*3. 42 U.S.C. § 1986*

42 U.S.C. § 1986 provides a cause of action for neglecting to prevent a conspiracy under § 1985. A claim under § 1986 "depends on the existence of a valid claim under § 1985."[130] Where Mr. Miller fails to state a claim under § 1985, his § 1986 claim also fails.

---

[127] *Jiricko v. Frankenburg Jensen Law Firm*, 764 F. App'x 664, 669 (10th Cir. 2019).

[128] (*See* Compl. ¶ 22, Doc. No. 1.)

[129] *Green*, 401 F. App'x at 376 ("Mere differences in race [or ethnicity] do not, by themselves, support an inference of racial animus.").

[130] *Wright v. No Skiter, Inc.*, 774 F.2d 422, 426 (10th Cir. 1985).

*4. 42 U.S.C. § 1981*

42 U.S.C. § 1981 "prohibits racial discrimination in 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'"[131] A prima facie § 1981 claim requires a showing that (1) "the plaintiff is a member of a protected class," (2) "the defendant had the intent to discriminate on the basis of race," and (3) "the discrimination interfered with a protected activity as defined in § 1981."[132] The second element "requires a plaintiff to show that the defendant 'intentionally or purposefully discriminated against [him].'"[133] A plaintiff must also "allege facts plausibly stating a claim that the alleged discrimination was the but-for cause of the alleged interference with a protected activity."[134]

As explained above, Mr. Miller alleges no facts suggesting discriminatory intent. His allegation that several defendants are Jewish, and he is not, is insufficient to show discrimination. And he has not alleged facts showing discrimination was the but-for cause of any interference with contract rights. Accordingly, Mr. Miller fails to state a claim under § 1981.

---

[131] *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1532 (10th Cir. 1995) (footnote omitted) (quoting 42 U.S.C. § 1981(b)).

[132] *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001).

[133] *Amarsingh*, No. 24-1391, 2026 U.S. App. LEXIS 3928, at *9 (quoting *Reynolds*, 69 F.3d at 1532).

[134] *Id.* (citing *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020)).

In sum, Mr. Miller fails to state a claim against Mr. Strassberg or the Elbaum Parties under any of these federal civil rights statutes.

E. State Law Claim

Mr. Miller's remaining claim against these defendants is a state law claim for intentional infliction of emotional distress. If all federal claims are dismissed, the court should decline to exercise jurisdiction over any remaining state law claims.[135] Accordingly, the undersigned recommends the district judge dismiss this claim without prejudice.

## III. Mr. Miller's Motion for Preliminary Injunction

Mr. Miller filed a motion for a preliminary injunction seeking to enjoin enforcement of any order purporting to extend the 2016 permanent injunction in *NPEC v. Miller*.[136] As explained above, Mr. Miller's underlying claim for this relief is barred by the *Rooker-Feldman* doctrine. For this reason, and where all the claims in this action are subject to dismissal, Mr. Miller is not entitled to the requested preliminary injunctive relief. His motion should be denied.

## RECOMMENDATION

The undersigned recommends the district judge:

---

[135] *See Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d at 1156 ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

[136] (Pl.'s Mot. for Prelim. Inj. & Supporting Mem., Doc. No. 37.)

1) grant Judge Stormont's motion to dismiss,[137] dismiss Mr. Miller's federal claims for monetary damages against Judge Stormont with prejudice, and dismiss Mr. Miller's remaining claims against Judge Stormont without prejudice for lack of jurisdiction;
2) grant Mr. Strassberg's motion to dismiss[138] and the Elbaum Parties' motion to dismiss,[139] and dismiss all claims against these parties without prejudice; and
3) deny Mr. Miller's motion for preliminary injunction.[140]

The parties have the right to object to this Report and Recommendation within fourteen days, and failure to object may be considered a waiver of objections.[141]

DATED this 17th day of August, 2026.

BY THE COURT:

Daphne A. Oberg

Daphne A. Oberg
United States Magistrate Judge

---

[137] (Doc. No. 22.)

[138] (Doc. No. 25.)

[139] (Doc. No. 26.)

[140] (Doc. No. 37.)

[141] *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).